# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI WESTERN DIVISION

**Adrian Dunn**,

               Plaintiff;

           v.

**United States of America**,

               Defendant.

Case No.16-CV-00493-BCW

## UNITED STATES' ANSWER AND SUGGESTIONS IN OPPOSITION TO DEFENDANT DUNN'S MOTION TO SET ASIDE CERTAIN ADMINISTRATIVE FORFEITURES

The United States of America, by its attorneys, Tammy Dickinson, United States Attorney, and James Curt Bohling, Assistant United States Attorney and Chief, Monetary Penalties Unit, provides the following as an Answer and as Suggestions in Opposition to defendant Adrian Dunn's Motion to Set Aside Declaration of Forfeiture Pursuant to Title 18 U.S.C. § 983(e):

### Answer and Suggestions in Opposition

On February 27, 2015, defendant Adrian Dunn filed a motion pursuant to 18 U.S.C. § 983(e) to set aside administrative forfeiture actions by the United States Department of Homeland Security, U.S. Customs and Border Protection ("CBP") as to a Chevrolet Caprice,[1] a Chevrolet Corvette,[2] and $41,000 in United States Currency (Case No. 09-CR-0188, Doc. 872). The United States requested that the Court assign this document a civil case number (Case No. 09-CR-0188, Doc. 873). The Court granted this motion

---

[1] The Caprice was sold at auction on September 21, 2011, for $5,600.
[2] The Corvette was sold at auction on December 16, 2009, for $23,700.

(Case No. 09-CR-0188, Doc. 903). Dunn then filed both a Complaint (Doc. 1) and a Motion (Doc.3), and the Court declared that the United States could respond to those pleadings at one time (Doc. 12).[3]

## I.    SUMMARY OF THE ARGUMENT

The factual background of this case, set forth at length below, is relatively complicated and involves the interplay of administrative forfeiture and criminal forfeiture. In summary, the Fines, Penalties, and Forfeitures ("FP&F") Officer stationed in St. Louis (and now retired) sent notices of the intent of the Department of Homeland Security ("DHS"), Customs and Border Protection ("CPB),[4] to defendant Dunn to administratively forfeit certain assets seized during a large-scale drug investigation in Kansas City by ICE of the Alejandro Corredor drug organization. In response to these notices, Dunn, acting *pro se*, filed documents which appeared to be petitions for relief from the forfeitures, which request agency action and do not require the agency to refer the case to a United States Attorney's Office for the initiation of further forfeiture proceedings. However, attached to these petitions were forms that appear to be claim forms, the filing of which would require the agency to refer the case to a United States Attorney's Office, which, upon receipt of the referral, is obligated to initiate a civil or criminal forfeiture action in United States District Court. The FP&F Officer never made such a referral and, although the United States Attorney's Office independently named the assets

---

[3] In its Order, the Court allowed the United States 60 days from the date of its Order, July 26, 2016, in which to file its responsive pleading if it waived service of process (Doc. 8). The United States filed a written notice with the Court waiving service of process (Doc. 10).

[4] CBP processes forfeitures for DHS's criminal investigative agency, Homeland Security Investigations ("HSI"), also still known by its former title, Immigration and Customs Enforcement ("ICE"). At the time of the events of this case, the agency was called ICE.

in the criminal indictment naming Corredor, Dunn, and others, the criminal forfeiture was never completed. CBP eventually completed administrative forfeitures of the assets in question.

To further complicate matters, for reasons set forth below, the $41,000 in United States Currency was never identified as such in the Notices sent out by CPB. However, the record suggests that Dunn had actual knowledge that the $41,000 was included in the administrative forfeiture action. Nonetheless, CPB made no referral to the US Attorney's Office as to the $41,000.

Dunn's submission of both petition forms and a claim forms undoubtedly resulted in a real ambiguity for the FP&F Officer to resolve in determining how to go forward. In looking at the administrative record in retrospect, the United States has concluded that despite the ambiguity, Dunn filed claims with CBP's FP&F Officer, such that CBP was required by the applicable forfeiture law to refer the claims to the United States Attorney's Office for the Western District of Missouri for the initiation of a forfeiture case in federal district court. Consequently, CBP's administrative forfeiture of these assets was ineffective.

Despite the United States' concession that the administrative forfeiture should be vacated, the United States is not automatically obligated to return the property. An individual has no property right in assets that are proceeds of or that are used to facilitate illegal narcotics activity, as by law title to such assets vests in the United States at the time of offense. Consequently, the United States requests a hearing at which it can establish that these assets are the proceeds of or facilitating of illegal narcotics activity, and that consequently Dunn has no equitable right to their return.

Case 4:16-cv-00493-BCW   Document 14   Filed 09/26/16   Page 3 of 21

## II.    FACTUAL BACKGROUND.

### A.    The seizures and the criminal case.

On June 12, 2009, as a result of "Operation Blockbuster," Dunn and several other coconspirators were indicted for conspiracy to distribute narcotics.[5] On the same date, U.S. Immigration and Customs Enforcement ("ICE") Special Agent Mark King obtained a search warrant for a property on Kentucky Avenue in Kansas City, Missouri, which Agent King identified as a residence used by Dunn and others to manufacture and distribute crack cocaine. State and federal law enforcement officers executed the search warrant and seized a number of items from the residence, including a 1974 Chevrolet Caprice registered in Dunn's name and $41,000.00 in United States currency found in the trunk of the vehicle.

Law enforcement officers executed another search warrant on the same date in connection with Operation Blockbuster at a different residence at on West 98th Street in Kansas City, Missouri. Among other items seized at this residence, officers seized a 2005 Chevrolet Corvette that was also registered in Dunn's name. Dunn was later arrested on June 25, 2009, and ordered detained pending the outcome of his criminal case.

On August 20, 2009, the United States Attorney's Office for the Western District of Missouri obtained a superseding indictment that included forfeiture allegations with respect to Dunn's interest in the $41,000.00 and the two vehicles. The indictment alleged the property was subject to forfeiture as proceeds or property traceable to drug trafficking. On February

---

[5] Operation Blockbuster began as a multi-agency investigation into a significant drug trafficking organization involving the importation of hundreds of kilograms of cocaine and marijuana from Mexico to the Kansas City metropolitan area, which resulted in the seizure of more than $1 .6 million and criminal charges against a total of 31 defendants.

Case 4:16-cv-00493-BCW   Document 14   Filed 09/26/16   Page 4 of 21

18, 2011, following a jury trial, Dunn was found guilty of both counts contained in the superseding indictment: conspiracy to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 841(a)(1); and use of a telephone to facilitate the distribution of cocaine in violation of 21 U.S.C. § 843(b). The property identified in the indictment as subject to forfeiture, however, was not criminally forfeited at the conclusion of Dunn's criminal case.

**B.    The administrative forfeiture proceedings.**

FP&F processed the seized property under two different case numbers based upon the residences where the property had been seized. FP&F processed the $41,000.00 and the 1974 Caprice seized from the Kentucky Avenue residence under Case No. 2009-4501-000081-01 ("Case 81"), and the 2005 Corvette seized from the West 98th Street residence was assigned Case No. 2009-4501-000082-01 ("Case 82").

On August 10, 2009, FP&F issued three notices of seizure to Dunn using three different residential addresses. One of the notices related to Case 81 and two notices related to Case 82, as further detailed below. All three notices were mailed via regular and certified mail. Each notice described the property seized from the respective residence and stated that the property was subject to forfeiture as narcotics proceeds pursuant to 21 U.S.C. §§ 881, 841, and 846.

The notices outlined the procedures available to Dunn to contest the administrative forfeiture of the identified property, and each notice contained an Election of Proceedings form which allowed Dunn to elect one of three options: 1) file a petition for relief and halt the administrative forfeiture proceedings; 2) abandon his interest in the property; or 3) file a claim and request that CBP refer the case to the U.S. Attorney for the commencement

- 5 -

of judicial forfeiture proceedings.[6] The notices also instructed Dunn that if he elected to file a claim, he needed to mark the appropriate box on the Election of Proceedings form and also complete the enclosed "Seized Asset Claim Form."

**Notices of Seizure for Case 81 - $41,000.00 and 1974 Caprice**

FP&F issued a notice of seizure for Case 81 via regular and certified mail addressed to Dunn on Crisp Avenue in Raytown, Missouri, which was the address listed on the vehicle registration for the Caprice under Dunn's name. The notice of seizure identified the following property seized from the Kentucky Avenue address:

- $1,709.00 in United States Currency;
- 1974 Chevrolet Caprice, IN47R4J212607, Domestic Value $2,125.00;
- 1975 Chevrolet Impala, IL69H5J152475, Domestic Value $1,525.00; and
- 2004 GMC Yukon, 1GKEC13VGSR163592, Domestic Value $10,900.00.

The notice of seizure erroneously identified $1,709.00 in seized currency instead of $41, 000.00, an error that appears to have stemmed from an internal report indicating that 1,709 bills were recovered from the trunk of the Caprice (totaling $41,000.00).[7] On September 26, 2009, the notice sent via

---

[6] Pursuant to 19 C.F.R. § 162.94, the FP&F Officer provides interested persons who elect to file a petition with additional time to file a claim beyond that provided by the Civil Asset Forfeiture Reform Act ("CAFRA"), 18 U .S.C. § 983(a)(2)(B). The Election of Proceedings form informs those who elect to file a petition that they may file a claim "at any time" pending the Agency's consideration of the petition, and that once a claim is filed, the Agency will stop the administrative process and send the case to the U.S. Attorney for court action.

[7] The report was from the CBP Seized Asset and Case Tracking System ("SEACA TS"), which is an electronic database used to initiate and process penalty and forfeiture cases. When ICE seized the property at issue in this case, the seizing agent entered the relevant background information of each seizure into SEACATS, including a detailed description of all the property seized from each residence as well as a narrative describing the

certified mail was returned to FP&F marked as "no such number, unable to forward."

## Notices of Seizure for Case 82 - 2005 Corvette

With respect to Case 82, FP&F issued notices of seizure to Dunn at two residential addresses via regular and certified mail. The first notice was addressed to Dunn at the West 98th Street address, which was the residence where ICE seized the Corvette. The notice of seizure identified the following property seized from this address:

• $40,000.00 in United States Currency;

• 2004 BMW 760 LX, WBAGN848DK10824, Domestic Value $23,900.00;

• 2004 Cadillac Escalade, 3GYFKF66N84G268451, Domestic Value $11,950.00; and

• 2005 Chevrolet Corvette, lG14Y22U855l28951, Domestic Value $26,900.00.

The $40,000.00 referenced in this notice of seizure is unrelated to the currency found in the trunk of the 1974 Caprice. Rather, according to the SEACATS report for Case 82, it appears the $40,000.00 was seized from one of Dunn's co-conspirators residing at the West 98th Street address at the time of the seizure.

The notice sent via certified mail was returned to FP&F marked as "attempted not known unable to forward." The second notice for Case 82 was addressed to Dunn and mailed to the Crisp address in Raytown, Missouri.

_____

circumstances of the seizure. Regarding the currency seized from the trunk of the Caprice, the agent entered the value "1,709" under quantity and "41,000"under domestic value. Below these amounts the agent detailed the number of bills seized, categorized by denomination, all of which totaled 1,709.

- 7 -

The regular mail and the certified mail were later returned to FP&F as undeliverable and marked as "return to sender- no such number."

Of the six[8] total notices of seizure sent to Dunn on August 10, 2009, the only notices *not* returned to FP&F as undeliverable were the notices sent via regular mail to the Kentucky Avenue and West 98th Street addresses.

On or about August 13, 2009, FP&F Officer Zakibe learned of Dunn's arrest and incarceration. Thus, on August 13, 2009, FP&F mailed additional copies of the notices of seizure for both Case 81 and Case 82 to Dunn using the address for the jail facility where he was held.

On September 4, 2009, FP&F received a response from Dunn to both notices of seizure. He returned the Election of Proceedings forms for Case 81 and 82, signed by him and dated August 21, 2009. On both forms Dunn checked the box for filing a petition; however, he also attached two "Seized Asset Claim Forms," one for the 1974 Caprice in reference to Case 81, and another claim for the 2005 Corvette and for $40,000.00 in reference to Case 82. Dunn also included a handwritten note clarifying that the $40,000.00 was seized from the trunk of his 1974 Caprice. In the note, Dunn alleged that the currency constituted proceeds of the sale of a 2003 Ford Conversion Van and profits from his alleged towing business. He also claimed the money "had to do with [his] 2005 Chevrolet Corvette," though he did not elaborate on this point.

The confusion over Dunn's reference to $40,000.00, as opposed to the $41,000.00 actually recovered from the trunk of the Caprice, is likely due to the inaccurate notice of seizure for Case 81 that referenced the seizure of $1,709.00. The fact that Dunn's claim for the currency was in response to the

---

[8] Three notices were sent to the addresses referenced above via certified and regular mail, thus totaling six separate mailings.

Case 4:16-cv-00493-BCW   Document 14   Filed 09/26/16   Page 8 of 21

notice of seizure for Case 82- which identified the seizure of $40,000.00 from a co-conspirator - and the inclusion of his note clarifying where the currency was seized further supports this explanation. It is also apparent from reviewing Dunn's claim for the currency that he originally wrote "$41,000," which was later crossed out.

FP&F treated Dunn's response as a petition for relief pursuant to 19 U.S.C. § 1618, but continued to separately process the administrative forfeiture of the currency and the Caprice from the Corvette. On September 9, 2009, FP&F Officer Zakibe faxed Dunn's handwritten note regarding the $40,000.00 under a cover sheet titled "Petition" to ICE Special Agent King, requesting that he investigate Dunn's claim as to the source of the currency. On November 30, 2009, Agent King responded that the currency had been included in the indictment as a forfeiture allegation and referred to "overwhelming evidence" that Dunn was actively involved in drug trafficking activities. Agent King refuted Dunn's claim to the source of the currency by stating that further investigation had revealed that Dunn gave away the conversion van and the Corvette to help satisfy a drug debt, but had not realized any profit from the transaction. On the contrary, it appeared Dunn still maintained a drug debt of several thousand dollars even after giving away both vehicles.

On December 2, 2009, FP&F issued a decision letter denying Dunn's petition through his attorney, Patrick Peters of Peters & Peters, P.C. The decision letter stated the petition was denied because of Dunn's ongoing criminal case, and that administrative forfeiture would be delayed pending the resolution of the criminal case. The decision letter only referenced Case 81, the FP&F case number for the $41,000.00 and the Caprice, but it did not identify any specific property. The letter notified Dunn that he had thirty

days in which to submit a supplemental petition.[9] FP&F did not receive a supplemental petition from Dunn or his attorney.

With respect to Case 82, FP&F initiated administrative forfeiture proceedings by publication for three consecutive weeks in *The Kansas City Daily Record,* beginning on September 16, 2009. On October 21, 2009, after no other claims were filed following publication, FP&F issued a declaration of forfeiture for the property seized from the West 98th Street residence, to include the 2005 Corvette. On December 23, 2009, the Corvette was sold at an auction for $23,700.00.

Beginning in August 2010, Dunn and FP&F Officer Zakibe exchanged several letters in connection with the seized property at issue in this case. On August 31, 2010, Dunn mailed a three-page, handwritten letter to FP&F Officer Zakibe requesting her assistance in returning the currency and the two vehicles.[10] In the letter, Dunn alleged that his property had no connection to drug trafficking and was seized without a search warrant in violation of the Fourth Amendment. Dunn referred to Patrick Peters as his "prior attorney" and faulted Mr. Peters for failing to file a supplemental petition within thirty days of the petition denial letter. Dunn also alleged that he owned two legitimate businesses, A.D. Towing and Home General Remodeling, which had suffered decreased business as a result of the seizure and loss of property. Notably, Dunn did not allege that he filed a supplemental petition in the August 2010 correspondence with FP&F Officer Zakibe.

---

[9] Pursuant to 19 C.F.R. § 171 .61, supplemental petitions must be filed within *sixty* days from the date of the decision letter. The decision letter's reference to a thirty-day filing period appears to have been in error.

[10] In this letter, Dunn referred to the seizure of $41,000.00 in currency, rather than the $40,000.00 identified in his petition.

In an undated letter, FP&F Officer Zakibe replied to Dunn and referred to his August 31, 2010, letter as a "petition." She attempted to assure him that there was probable cause to seize the $41,000.00 and the Caprice, but that she "could not do anything at this point" with the property because Dunn's criminal case was still pending. Once the criminal case concluded, FP&F Officer Zakibe stated she would respond to the "original petition," though it is unclear whether FP&F Officer Zakibe was referring to Dunn's August 31, 2010, letter, or the petition originally received on September 4, 2009, which had already been denied in December 2009. Regarding the Corvette, FP&F Officer Zakibe said she had no information on that vehicle and would need the FP&F case number in order to locate it.

On September 14, 2010, Dunn mailed another letter to FP&F contesting the legality of the seizure of the Corvette. Dunn reiterated his belief that the government had failed to obtain a search warrant authorizing the seizure of his property. On September 17, 2010, FP&F Officer Zakibe replied to Dunn and told him to address any questions concerning the validity of the seizure with the U.S. Attorney's Office or the ICE case agent. She further advised Dunn that she had located the FP&F case number for the Corvette (Case 82), and informed him that the vehicle had been administratively forfeited and sold at auction.

On February 28, 2011, following Dunn's conviction in the criminal case, FP&F initiated administrative forfeiture proceedings against the $41,000.00 and the Caprice. FP&F published notice of its intent to forfeit the property for three consecutive weeks in *The Kansas City Daily Record* beginning on March 21, 2011. On April 20, 2011, after receiving no claims, FP&F issued a declaration of forfeiture for the currency and the Caprice.

### C. Dunn's prior litigation.

On December 17, 2012, Dunn filed a motion to vacate the administrative forfeiture findings by CBP (Doc. 774). The motion was captioned "Adrian Dunn v. Jaynie Zakibe, Fines Penalties and Forfeitures Officer, Customs and Border Protection, Department of Homeland Security" (Doc. 774). Dunn argued in this motion that he had received inadequate notice of the administrative forfeiture (Doc. 774). In its response, the United States noted that Dunn's motion was either a civil lawsuit under 18 U.S.C. § 983(e), in which case it needed a new civil number, or a *Bivens* suit against Ms. Zakibe, in which case it needed to be filed as a new civil case and served personally on the defendant (Doc. 776). The Court provisionally denied Dunn's motion pending Dunn refiling it as a civil case (Doc. 783).

In response, on February 15, 2013, Dunn filed a civil *Bivens* complaint naming Ms. Zakibe as the defendant, which was given Civil Case Number 13-CV-0209-FJG (Doc. 1). On March 4, 2013, the district court entered an order requiring Dunn to either pay the $350.00 filing fee or file a request to proceed *in forma pauperis* ("IFP") (Doc. 3). Following Dunn's submission of an IFP affidavit (Doc. 4), on May 22, 2013, the district court transferred the case to the United States District Court for the Eastern District of Missouri because Ms. Zakibe was located in St. Louis (Doc. 7). The Eastern District placed the case on its prisoner litigation docket, and summarily dismissed it by an Order dated January 24, 2014 (Case No. 13-CV-1026-JAR; Docs 14 and 15).

Dunn later filed an administrative claim with CBP pursuant to the Federal Tort Claims Act challenging the above-referenced administrative forfeitures, but CBP properly denied that claim.[11]

---

[11] Neither a *Bivens* action nor an FTCA action may be used to challenge an agency's administrative forfeiture action. *United States v. Bazuaye*, 41 F.

## III.    ARGUMENT.

### A.    18 U.S.C. § 983(e) is the exclusive remedy for challenging a completed administrative forfeiture on notice grounds.

Dunn's challenge to the administrative forfeiture completed by CBP is properly brought pursuant to 18 U.S.C. § 983(e), as that provision is the exclusive remedy for such challenges.

18 U.S.C. § 983 was passed as part of the Civil Asset Forfeiture Reform Act of 2000, or CAFRA. Section 983(a) sets forth the procedures for non-judicial civil forfeiture proceedings undertaken by federal agencies, a process commonly known as administrative forfeiture. Section 983 requires that, following a seizure of an asset for forfeiture, the agency send a notice to any known potential claimant in which the potential claimant is provided at least 35 days in which to file a claim with the agency. 18 U.S.C. § 983(a)(1)(A) and (2). Once a claim is filed, the agency shall refer the case to the relevant United States Attorney's Office, which is required to file within 90 days as to the claimed assets a civil judicial forfeiture action, or obtain a criminal indictment alleging that the claimed assets are subject to forfeiture. 18 U.S.C. § 983(a)(3).

Where, as here, the agency has issued a declaration of forfeiture as to an asset, Section 983(e) allows the filing by an appropriate person of a motion to set aside the administrative forfeiture. Section 983(e) provides specifically as follows:

---

Supp. 2d 19, 25, 29 (D.D.C. 1999) (FTCA); *Bailey v. Patterson*, 2006 WL 2642543, *2 (D.S.C. 2006) (*Bivens*).

Case 4:16-cv-00493-BCW   Document 14   Filed 09/26/16   Page 13 of 21

**(e) Motion To Set Aside Forfeiture.—**

**(1)** Any person entitled to written notice in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute who does not receive such notice may file a motion to set aside a declaration of forfeiture with respect to that person's interest in the property, which motion shall be granted if—

**(A)** the Government knew, or reasonably should have known, of the moving party's interest and failed to take reasonable steps to provide such party with notice; and

**(B)** the moving party did not know or have reason to know of the seizure within sufficient time to file a timely claim.

**(2)**

**(A)** Notwithstanding the expiration of any applicable statute of limitations, if the court grants a motion under paragraph (1), the court shall set aside the declaration of forfeiture as to the interest of the moving party without prejudice to the right of the Government to commence a subsequent forfeiture proceeding as to the interest of the moving party.

**(B)** Any proceeding described in subparagraph (A) shall be commenced—

**(i)** if nonjudicial, within 60 days of the entry of the order granting the motion; or

**(ii)** if judicial, within 6 months of the entry of the order granting the motion.

**(3)** A motion under paragraph (1) may be filed not later than 5 years after the date of final publication of notice of seizure of the property.

**(4)** If, at the time a motion made under paragraph (1) is granted, the forfeited property has been disposed of by the Government in accordance with law, the Government may institute proceedings against a substitute sum of money equal to the value of the moving party's interest in the property at the time the property was disposed of.

**(5)** A motion filed under this subsection shall be the exclusive remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture statute.

Section 983(e) is the exclusive remedy for challenging an administrative forfeiture under CAFRA. *United States v. Sims*, 376 F.3d 705, 707 (7th Cir. 2004) (section 983(e) is the exclusive remedy for challenging an administrative forfeiture that was commenced on or after August 23, 2000); *Valderrama v. United States*, 417 F.3d 1189, 1195 (11th Cir. 2005) (same). Federal Rule of Criminal Procedure 41(g), in contrast, is not generally the correct avenue for challenging completed administrative forfeitures. *United States v. Madrigal,* 536 Fed. Appx. 720 (9th Cir. 2013) (because Rule 41(g) does not apply to civil forfeitures, it may not be used to seek the return of administratively forfeited property); *United States v. Tinajero-Porras,* 378 Fed. Appx. 850, 851-52 (10th Cir. 2010) (because § 983(e) is the exclusive vehicle for challenging an administrative forfeiture, the court of appeals lacks jurisdiction to review the denial of a Rule 41(g) motion for the return of administratively forfeited property).

- 15 -

The effective scope of section 983 is not entirely clear. The heartland of section 983 certainly encompasses claims that an agency failed to properly provide notice of a pending administrative forfeiture. *Mohammad v. United States*, 169 Fed. Appx. 475, 480-81 (7th Cir. 2006) (district court has no jurisdiction to review the merits of an administrative forfeiture; it has jurisdiction only to review the adequacy of the notice given to the claimant of the procedure for filing a claim); *Valderrama v. United States*, 417 F.3d 1189, 1196 (11th Cir. 2005) (claimant may only seek relief under section 983(e) when the Government has failed to comply with the notice requirements; he may not challenge the forfeitability of the property). However, federal courts have held that section 983 encompasses other types of due process violations, including an agency's failure to recognize a filing as a claim requiring a referral to a U.S. Attorney's Office. *United States v. Thomas*, 319 F.3d 640, 642-43 (3d Cir. 2003) (district court had jurisdiction to consider, and reject, claimant's argument that seizing agency lacked jurisdiction to conduct administrative forfeiture proceeding); *Rodriguez v. United States*, 2006 WL 889557, *2-3 (D.N.H. 2006) (court had jurisdiction to determine whether DEA committed a due process violation when it viewed the document claimant filed as a remission petition and not as a claim contesting the forfeiture).

### B. CBP did not refer the case to the United States Attorney's Office for consideration of the filing of a civil judicial or criminal forfeiture action even though Dunn filed a document that should have been construed as a claim.

The documents filed by Dunn with CBP should have been construed as a claim, not just as a petition for remission or mitigation. Consequently, the administrative forfeitures were ineffective.

An individual who receives a notice of a pending administrative forfeiture is informed of two options to proceed, which are not mutually exclusive. First, the individual may file a petition for remission with the agency asking the agency to reduce or eliminate the forfeiture. *See Malladi Drugs and Pharmaceuticals, Ltd. v. Tandy*, 538 F. Supp.2d 162, 169-70 (D.D.C. 2008) (if the DEA receives a petition clearly labeled as a Petition for Remission or Mitigation, and containing no reference to referring the matter for judicial forfeiture, the DEA cannot be faulted for treating the petition as a remission petition and not as a claim requiring referral to the U.S. Attorney), aff'd on other grounds, 552 F.3d 885 (D.C. Cir. 2009). The agency's decision on a remission petition is generally not subject to judicial review. *United States v. Shigemura*, 664 F.3d 310, 312 (10th Cir. 2011) (the denial of a remission petition by a federal agency is not subject to judicial review).

In contrast, 18 U.S.C. § 983(a)(2) sets forth the procedure for filing a claim in administrative forfeiture proceeding. Once a claim is filed in an administrative forfeiture proceeding, the administrative agency is charged with forwarding the claim to the relevant United States Attorney's Office for the consideration of the filing of a civil judicial forfeiture complaint, or the inclusion of the claimed asset in a criminal case, or both. *United States v. Martin*, 662 F.3d 301, 304 (4th Cir. 2011).

In this case, the CBP FP&F Officer interpreted Dunn's submissions as petitions for remissions, only, and not claims. Consequently, the agency did not forward Dunn's submission's to the U.S. Attorney's Office for consideration of the filing of a civil judicial forfeiture case or for inclusion in a criminal case, but instead completed administrative forfeiture of the assets once the agency had denied the remission petitions. In fact, the United States Attorney's Office did include these assets in the criminal case, but elected not

to complete the criminal forfeiture process because the agency had reported that the administrative forfeiture process was complete.

While the factual record here is complex, and Dunn's submissions are not a model of clarity, after review of the entire record the United States has concluded that CBP should have interpreted Dunn's submissions as claims, not just remission petitions, and therefore should have referred the assets to the United States Attorney's Office to allow for the filing of a civil judicial forfeiture complaint or, and more likely, the completion of the already ongoing criminal forfeiture proceeding. Consequently, the United States must concede that the administrative forfeitures in this case were ineffective.

## C. The United States requests a hearing to establish that the assets in question are the proceeds of or facilitating of narcotics related crimes and should not be returned to Dunn.

Even though the administrative forfeiture of the assets in this case may be ineffective, their return is not automatic. Dunn has no property interest in assets are the proceeds of or facilitating of narcotics related crimes, and the United States requests a hearing to establish that these assets should not be returned to Dunn.

Congress has established that no person has a property right in drug proceeds. 21 U.S.C. § 881(a)(6). As a result, return of property involved in a void administrative forfeiture is not an automatic result. In *United States v. Clymore,* 245 F.3d 1195 (10th Cir. 2001), the Court held that property associated with a void administrative forfeiture does not have to be returned automatically to the claimant; even if the statute of limitations has run on the filing of a new forfeiture action, claimant must file a Rule 41(e) (now Rule 41(g) motion for the return of the property; if the property was lawfully

- 18 -

seized, and the Government establishes that it is subject to forfeiture, the Rule 41 motion will be denied unless claimant is an innocent owner. *Id.* at 1202-03. Post –*Clymore* decisions have re-affirmed this procedure. *United States v. Rodriguez-Aguirre*, 414 F.3d 1177, 1186 (10th Cir. 2005) (Rodriguez-Aguirre II) (reaffirming Clymore II; per section 881(a)(6), no person has a property right in drug proceeds; therefore, notwithstanding the expiration of the statute of limitations on the Government's forfeiture action, claimant had no basis for seeking the equitable recovery of his property); *Alli-Balogun v. United States*, 281 F.3d 362, 371-72 (2d Cir. 2002) (following Clymore II; although the Government is barred from commencing a new forfeiture action if the statute of limitations has run, Government can quiet title to the property in a civil equitable proceeding brought by the claimant, but it loses the benefit of the pre-CAFRA burden shifting and must establish the forfeitability of the property); *Arevalo v. United States*, 2011 WL 442054, *7 (E.D. Pa. Feb. 8, 2011) (a person is not entitled to recover administratively forfeited property, even if his due process rights were violated, if the property is contraband – such as drug proceeds – or the claimant himself lacks clean hands); *United States v. Cash*, 2010 WL 2650022, *2-3 (D.S.C. July 1, 2010) (following Babb; claimant unable to show seized money came from a legitimate source, and Government relies on evidence from claimant's criminal case to show it was drug proceeds).

Procedurally, this process would normally have two steps, with this 18 U.S.C. § 983 action being resolved first, followed by the filing by Dunn of a motion pursuant to Federal Rule of Criminal Procedure Rule 41(g) for return of property next. *See Babb v. U.S. Drug Enforcement Agency*, 146 Fed. Appx. 614, 618-19 (4th Cir. 2005) (following Clymore II and Alli-Balogun; civil forfeiture is not the exclusive means of quieting title to seized property; if

forfeiture is foreclosed, the Government may quiet title in an equitable action filed by the claimant for the return of his property; a drug dealer seeking return of seized drug proceeds will not be able to prevail in such an action). Given the winding procedural history of this case, and the fact that Dunn has filed Rule 41 type motions in the past (albeit prematurely), the United States is amenable to setting a hearing on Rule 41 type relief without requiring a further filing from Dunn. The United States asks that the hearing date be set it least eight weeks out in order to allow it to obtain a writ for Dunn's appearance, as he is incarcerated.

The United States would also note that the issues attendant any request for return of the assets that have been sold are somewhat different, but will brief those issues for the Court should they become relevant.

## CONCLUSION

For the reasons set forth above, the United States requests that the Court set a hearing on whether the assets at issue should be returned to Dunn.

Tammy Dickinson
United States Attorney

By    */s/ James Curt Bohling*

James Curt Bohling
Chief, Monetary Penalties Unit
Assistant United States Attorney
400 E. 9th Street, Suite 5510
Kansas City, Missouri 64106
Telephone: (816) 426-3122

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, and was also served by mail upon:

Adrian L. Dunn, #21571-045
F.C.C. Forrest City (Low)
P.O. Box 9000
Forrest City, Arkansas 72335


/s/ James Curt Bohling

James Curt Bohling
Chief, Monetary Penalties Unit
Assistant United States Attorney